Okay, I'd like the attorneys representing the parties to step up to the podium. I want you to state your name, tell the court who you represent, and approximately how long your argument will take. I'm going to start with the appellate. Please step up to the podium. Good morning, counsel. You can come up, too. Good morning. Good morning, your honors. My name is Chris Gerke. I represent the appellant, Anthony Shaw, and my argument shouldn't take longer than 10 minutes, depending on questions. Very good. Counsel, good morning. Good morning. My name is Maggie Hillman. I'm Assistant State's Attorney representing the people of the state of Illinois, and my argument shouldn't take longer than 10 minutes. Very good. Okay. Counsel for Mr. Shaw, why don't you present your argument to the court. Thank you, your honors. May it please the court. Your honors, this is a very unusual robbery case. The complainant, Luke Gibson, accused my client, Anthony Shaw, of robbing him at gunpoint in a CTA station of $20. Yet, the evidence in this case showed that my client did not have either a gun nor any money on his person when he was searched in that same station moments after that crime supposedly happened. In addition, your honors, the CTA surveillance video, which was discovered during discovery in this case, directly contradicts the complainant's original story to the police. In fact, your honors, the original charges against my client, which were presumably obtained after the complainant gave this story, my client was acquitted of all those charges, that being armed robbery, aggravated kidnapping, and aggravated unlawful restraint. Yet, the court nonetheless found that my client was still guilty of what it called strong armed robbery, simple robbery, which the state's evidence simply did not prove. But didn't he threaten the victim? Your honors, the evidence in this case shows that any kind of threat that occurred here was due to the threat of his, I'm sorry, was made in the context of him having a gun. Now, that is what the testimony showed. The testimony showed that, according to Gibson, this person threatened him with a gun. He did make other threats, but it was always in the context of him holding a gun. But the evidence shows, your honors, as I said, that my client did not have a gun at the scene, and further shows that the court disbelieved the gun testimony. The briefs mention a black gun, black colored gun, being pulled out. You're right, your honors. Well, it depends on which story you believe from the complainant, your honors. The initial story was that he pulled a gun on him on the train. He told the police officers at the scene that it was, like, I forget his exact words, but he said it was a small gun. At trial, however, the gun grew to seven or eight inches. In any case, we know that the court disbelieved the gun testimony because it acquitted him of all gun-related charges. Isn't it a fact that Mr. Gibson did accuse him of threatening him with a gun and took money from him? That is a fact. That's what Gibson said. Why is his testimony insufficient for us to affirm the conviction? Well, your honors, there's multiple reasons why his testimony is insufficient. First of all, we know it's contradicted by the evidence. It's contradicted by the police testimony at trial. When you say contradicted by the evidence, you've got to tell me what evidence you're talking about. Excuse me, your honors. It's contradicted by the fact, well, the primary fact being that my client did not have a gun or any money on him when he was in the station, despite the alleged victim's accusation that my client took money from him with a gun. And my client was on video, your honors, on surveillance video essentially the entire time, was brought back into the station, searched by the police. They opened his jacket. They reached into his pockets. He was in police custody for 15 minutes, nearly 15 minutes, about 14 minutes. And yet no money was found. No gun was found. The police also searched the station. They looked in the garbage cans. They looked around. They testified to this. And yet those things were not recovered. In addition, your honors, we have the fact that Mr. Gibson changed his story. In his original pretrial statements to the police and investigators, Mr. Gibson gave a seemingly highly incriminating account. There are inconsistencies in the testimony to be resolved by the trial court. Well, this inconsistency could not be resolved by the trial court because it was directly contradicted by objective video evidence. In this case, Gibson testified that my client followed behind him off of the train onto the train platform, pushed him up against a wall, pointed at the ATM and ordered him to give money, threatened to kill him when they got to the turnstile before they went to the ATM, stood next to him a few feet away while he was at the ATM and ran off after he got money. The surveillance video did not show him being pushed up against a wall. The surveillance video didn't show any single one of those facts I just testified to, your honors. That's correct. He was never touched. He did testify, too. Despite that, at trial, he had to admit because there was a video that my client never laid a hand on him. Now, in addition, your honors, we have, when you actually look at the video, the two men are walking side by side. Gibson is talking to my client. Gibson actually speeds up and speeds up while they're on the ramp and walks quickly away from my client. My client doesn't react. The complainant walks immediately through the turnstiles, goes right to an ATM. He actually arrives at the ATM at the same time my client arrives behind the turnstile. My client is not standing a few feet away from him. He's standing at the turnstile, 20 feet away, out of sight. The testimony is completely, or his original story is completely contradicted by the video evidence. And so at trial, he gave a different story, which complied more closely with the video. But even that was contradicted. He testified that to explain why he was talking to my client, he characterized it as him aggressively arguing with my client, who, again, he says is an armed robber who is threatening to kill him. He says he's aggressively arguing with him about being robbed. And that when they arrived at the turnstile before he went to the ATM, he says that they were arguing about why Shaw would do this, why my client would do this all over $20. However, that's wrong for two reasons. One is that Gibson testified that he didn't even, his testimony indicated that he didn't even decide to give him $20 until he got to the ATM because it was the minimum. And also, they were never there at the same time. If you look at the video evidence, as I just said, Gibson arrives at the ATM at the same time my client arrives at the turnstile. They just aren't there at the same time. And there's numerous other contradictions, Your Honors, that are more clear. But then after he allegedly gets $20, Gibson goes to the turnstile. Yes. And they have a conversation for a while. With a cigarette. Yes, exactly, Your Honors. He was supposedly this armed robber, supposedly this armed robbery victim. After handing over the money, in his own testimony, he says he wanted to continue to argue with him, despite his previous testimony that he was trying to diffuse the situation and leave. And the idea, Your Honors, I would submit that it's unbelievable that an alleged armed robbery victim would stand and talk to his supposed attacker for more than a minute and a half, share cigarettes with him. In his own words, he was leaning casually against the turnstile. And then he walked out of the station, which is contrary to his pretrial statement that he ran out of the station because he was afraid. So the $22 total, the $2 came from the wallet?  He told Officer Sebus, I believe, that the victim took $22 in total. But he testified at trial that it was $20 exactly. So there was some testimony that he initially showed my client $2. And my client laughed at him or something like that and said to give me more money. But, again, that testimony, again, is contradicted by what he told the police. He didn't mention that fact to several police officers. The first thing I believe he said to the police was, Mr. Gibson, was, I think I've been robbed. But he said, yeah, right, exactly. It wasn't that I have been robbed. Right. I think it was that someone tried to rob me or something like that. And I'd like to point out, too, that this is a case where most of the police, nearly all the police officers in this case, were actually called by the defense to point out all the inconsistencies in Gibson's testimony and in his original story. And I'd like to submit, in addition to all those contradictions between the officer's testimony and the alleged victim's testimony, we have a story that's just simply not believable. This Illinois Supreme Court's held that where the testimony of a witness is contrary to human nature, then this court's not bound to believe that witness. And this is one of those rare cases, I think, where that's occurred here. What did your client throw away? Say again? What did your client throw away? Are you referring to the video that shows him throwing something away? Yes. I don't know what that is, Your Honor, but it's not a gun and it's not money. I think it's clear from the record. It's clear from the video if you look at it. It's neither a gun nor money. And I'd like to point out that whatever that was was not litigated or discussed below. The prosecution doesn't even mention it below or in their appellate brief. And I just don't know what that is. So the briefs talk about there being one of the instigators of this being someone taking a quantity of drugs from somebody else. Well, defense counsel attempted to ask a question as to whether And it was objected to. It was objected to. Successfully. Successfully. And my client in allocution did say that this was some kind of drug deal gone wrong and that he never received any money. Is that what it was? I don't know, Your Honors. We don't know from the evidence. The evidence doesn't say. So is it your position, essentially, counsel, that there's no evidence of any robbery having taken place in this case? My position, Your Honors, is that there's not sufficient credible evidence that a robbery took place. There was, obviously, Gibson's testimony. Other than his testimony. Other than his testimony, there's nothing, Your Honors, especially with regard to the use or threat of imminent force. Now, we know from the trial court's holding was that there was no firearm. We know that the court did not believe his testimony that there was a firearm. The video shows zero aggressive behavior by my client. It shows zero force. It doesn't show anything indicating that a robbery occurred. But the trial court dismissed all AAUW claims. Right, Your Honors. But, again, the only threat of force in this case, the only evidence of any threat of force in this case, related to the gun in my client's hand. It's true that the complainant said that my client made verbal threats to him, but it was always in the context of him having a gun. I think I have a site somewhere in my reply brief where I list all the times the complainant mentioned his being threatened, and they were all in the context of him having a gun. There's no evidence of any other non-gun threat of force in this case. So where the threat of force was limited to the gun, and the court disbelieved the gun testimony, and we actually have affirmative evidence in the record, objective video evidence, that my client didn't have a gun. We have testimony from the police officers, who were initially arrested and detained and searched him, that my client didn't have a gun. I don't think that we can say that there was sufficient evidence of a threat of force in this case. But threats of force can be communicated verbally. They certainly can, Your Honor. And they were. Well, yes, Your Honor, they were. But, again, there has to be objective, the threat of force has, I'm sorry, the subjective belief of the victim has to be reasonable based on the objective evidence. And here we have a situation where we have like a trifecta. We have his original story contradicted by the objective video evidence. We have his trial testimony contradicted by police testimony as to regarding various details, including the size of the gun. He initially told the police, he testified at trial that he refused to hand over his iPhone, but he told the police officers that he told my client that he didn't even have a phone. There's numerous contradictions there. And we have the fact that his story is just completely unbelievable. The idea that an armed robber would allow his supposed armed robbery victim to exit an empty train car and then go into a public place where there's 15 or 20 other people, not only that, to allow him to walk 20 feet away from him, where he would maintain by the turnstile, to go out of sight, in possession of his iPhone, right next to the exit of the station, apparently hoping that he would not call for help, or the police, or a CTA patron, or just walk out the station, is just simply not believable. It seems to me you've given a good closing argument. Would you like to wrap up your honor? I would love to wrap up your honor. For those reasons, your honors, because we have, again, the trifecta of contradictory video evidence contradicting testimony, the fact that the objective video evidence doesn't show any threat or force, and primarily the fact that the victim in this case, his testimony is completely unbelievable and the fact that it doesn't actually jive with the fact that my client did not actually have a gun or any money on him when he was searched by the police at the station, we respectfully request that you reverse this conviction. Thank you. Good morning again. Good morning. Please state your name for the record. My assistant state's attorney, Maggie Hillman, representing the people of the state of Illinois. Okay, counsel, it's clear that your client maintains that Mr. Gibson's testimony was unbelievable and that the other credible evidence rebuts his testimony. What does the state say? The state would contend that Mr. Gibson's testimony was corroborated by the CTA surveillance video and all of the essential elements of robbery. The victim testified that the defendant told him to withdraw money from the ATM and then the victim did withdraw that money and the defendant took $20 from him. And while the defendant was not found with any money on him, defendant's argument that he had no opportunity to discard the money is affirmatively rebutted by the video. As your Honor pointed out, the defendant is seen in the video throwing something in the trash merely 10 seconds before he's approached by the police. Didn't the police search that trash can? The police did search that trash can. Did they find any money? They did not find any money in that trash can, but again... So what inference does the court draw? Well, looking at the video, the police officer's search was cursory. They picked up a few things, put them back down, but they didn't really dig deep into the trash can. Is that in the record? I thought we just heard that there wasn't really an issue. Well, the people did not, in their opening brief, did not state specifically that the defendant threw something in the trash can. The people did argue that the defendant had every opportunity to discard the money at any time between the time that Gibson left the train station and the time that the police officers searched him. But the court found that there was no gun, no money. The court did find there was no money. In fact, there was no money ever recovered. The police officers did not recover any money from that trash can. And no gun, correct. The police officers also did not discover a gun. So there was no evidence that they recovered anything of any relevance in this case. It was material to the case. Well, in this case, it's certainly a reasonable inference to be drawn from the evidence that what was thrown in that trash can before the defendant was searched by the police was the $20. And all reasonable inferences should be taken in favor of the State. How is it reasonable when they didn't find anything? Again, it's clear from the video that they weren't searching for money at that time. They were searching for something larger. They picked up larger objects. And it's easy to see how something as small as a $20 bill could have fallen into the bottom of that trash can. How much trash was in the can? Is that an evidence? From the video, it's clear to see that there was a substantial amount. There's large things being picked up from the trash. Well, you pick up the large things so you can look at the smaller things, isn't it? I agree, Your Honor. However, a viewing of the whole video, in light most favorable to the people, it's apparent that the trial court's verdict should be affirmed because it's a reasonable inference that defendant did throw out that $20. Again, I don't understand how that dovetails with the fact that Judge Fallon did the opposite. Well, the judge found that there was no money recovered, but the judge did not find that the money was not thrown out. The judge simply found that there was no money recovered. And additionally, while the judge also found that there was no firearm recovered, a firearm is not an essential element of the offense of robbery. But in this case, we have Mr. Gibson saying that there was a gun involved. And you said that there was only some seconds after the defendant left the station that there was a commotion outside there and the police put him in handcuffs. That's true. The trial court did not find that the people proved beyond a reasonable doubt that defendant possessed a gun. They stated that because the gun was not recovered and was never seen in the video, they don't find beyond a reasonable doubt that a gun was present. However, the trial court did not find the victim incredible. In fact, the trial court stated numerous times on the record that they found the victim credible and that the video corroborated everything the victim had to say. And in finding that there was no gun, the trial court even mentioned that throughout the entire three clips of the video, defendant is walking behind the victim. And so the victim can't say what happened to that gun. But it is clear that there were times when the defendant was walking behind the victim. Well, the victim actually left the area. Didn't he walk away? I wouldn't characterize the video as saying the victim walked away. The victim was very close in front of defendant on the platform. And then as they were walking up the ramp, the victim testified that he was frustrated and angry and wanted to get the whole situation over with and walked about five feet ahead of him. But I wouldn't say walked away. Now, this was when they were inside, what was this, the train station? Yes. When they were past, when he was on the other side of the turnstile. Yes. And he walked away for himself. The victim did. After the victim gave defendant a $20 and felt that he was free to walk away because defendant had what he wanted, the victim did then walk away. And he walked out of the train station, but the victim testified and one of the officers testified that the victim actually ran once he was out of the train station. And they're smoking cigarettes together during this time. Well, the victim testified at trial that at the time the defendant saw the pack of cigarettes in his backpack and asked for one, and the victim testified that he was trying to defuse the situation. And here, people behave differently in different situations.  The trial court heard all of the evidence and has a better opportunity to determine the weight to be given to each testimony. So are we bound by the findings of the trial court, Judge? No, this court is not bound by the findings of the trial court. However, this court should not overturn the trial court's verdict unless the evidence is improbable or so unsatisfactory that it creates reasonable doubt as to defendant's guilt. Should we overturn it if it's against the material evidence, the other material evidence that's presented? Well, in this case, in this case specifically, there is no, there is, the people proved beyond a reasonable doubt that defendant robbed the victim. There is no evidence that the defense presented that the defendant did not at any time threaten the victim. Does your opponent's argument have any merit that other evidence other than the victim's testimony is against the manifest weight of the evidence? Does that have any merit whatsoever in your opinion? It does not. The video does not in any way contradict what the victim testified to. The video corroborates everything the victim said. The trial court heard the evidence and watched the video while the victim was able to narrate it for her. So wait, but the victim changed his story several times because the police officer, are we allowed to believe the police officers? I assume we are. Under oath? Yes. So if you believe the police officers, that contradicts what was stated and he also had the opportunity of seeing that video before his testimony. The inconsistencies that defendant is harking on, he's dissecting and exaggerating them and he's taking them out of context. The inconsistencies go to the testimony and the weight of the evidence. And here, the victim was subject to vigorous cross-examination. You said he was pushed against the wall. And then he testifies that he didn't put a hand on him. In a reading of the trial record, the victim does say that he doesn't recall saying that. And once the defense attorney pushes him more on cross-examination, the victim says, no, I don't recall saying that. So you don't believe police officers? No, I'm not saying that at all. Well, then which one? I mean, either you believe the police officers because that's exactly opposite of what he said. It's an immaterial inconsistency. It's immaterial? That's a very important threat. Well, besides the being pushed against the wall, the victim was not incredible. The trial court had an opportunity to hear all of these inconsistencies. The defense attorney argued all of these same arguments on his motion for a directed finding, his closing argument, and in his post-trial motions. And the trial court still found the victim credible. And the standard of review does not permit defendant a second credibility determination on appeal. The victim, again, he was unwavering that he saw the defendant had a gun. The defendant threatened him at least three times with that gun. The defendant forced him to get off the train and to withdraw the money and then took the money. Those are the elements of robbery. The briefs were candid enough to talk about pre-trial preparation of witnesses and how things changed in terms of their testimony. I'm sorry, can you? The record is candid enough to tell us that the pre-trial discussions for preparation for witnesses, that there were changes in their testimony.  In the people's testimony. Again, all of these inconsistencies were heard by the trial court. And the trial court had an opportunity to watch the video and is in a better position to terminate. Well, we can watch the video, too. We're in the same position as, in this case law that says that we're in the same position to watch the video as the trial court. Isn't that true? That's true, but the trial court had the opportunity to listen to the victim narrate exactly what was happening as it was going on and to watch the victim's mannerisms and was in a better position to determine the weight and credibility to be given to the testimony. But she didn't believe that there was a gun involved or that there was money. The trial court never said that she did not believe that the defendant did not have a gun. Instead, she found that the people had not driven beyond a reasonable doubt that the defendant had a gun. So if he didn't have a gun beyond a reasonable doubt, how is it that beyond a reasonable doubt he could make threats with a gun? She still found the victim's testimony that he saw the defendant with a gun. So isn't that inconsistent? If it's not beyond a reasonable doubt that he had a gun, then how can it be beyond a reasonable doubt that he did have a gun to make the threats? She did not find that. She found that the threats were beyond a reasonable doubt. I know, that's the inconsistency. I don't find it to be inconsistent. Additionally, the video corroborates the threats. The defendant walked with the victim up the ramp, waited at the turnstile. He never took his stare away from the door, ensuring that the victim couldn't run away without giving him the money. The victim also testified as he left the train station, he watched the defendant through the reflection of the doors, watching him the entire time. The video corroborates the victim's story that he was threatened into giving him the money. What was the latest story? Why did he do the trial? Elaborate, that's what you're saying. The victim was unwavering that he was threatened. He was never impeached on any of the essential elements of the crime. Well, obviously not, because he testified that the threat had to do with a gun. Correct. He testified that the threat had to do with a gun, and just because the gun was not recovered does not mean that the gun did not exist. The trial court found that given light of all of the evidence, not just the victim's testimony, the people did not prove beyond a reasonable doubt, but that does not mean that the trial court found the victim's testimony that the defendant had a gun incredible. Counselor, are you essentially arguing that if a complainant argues that he was robbed with a gun, and that $20 was taken, and that if after all of these events allegedly occur, that is moments later this defendant is apprehended without a gun, without money, this court is supposed to believe that a robbery took place? Well, the video... Just answer my question. We're supposed to believe, when that's the evidence that's presented to us, that a robbery took place. Yes, based on the video surveillance that shows the defendant had an opportunity to discard the $20 immediately before he was searched, and based on the testimony of the victim, that he saw the weapon, that defendant walked behind him, and that... But wait one second. When you say that there was time for him to discard the money, and the court is also aware that a search took place, regardless as to how extensive, they searched for the money. Yes. The video shows the alleged defendant walking past the turnstile and out of the station, correct? It does. And then he was immediately arrested. It does. Without a gun and without money. Before... At counsel, without a gun and without any money. That's correct. Okay. Before a defendant walks out of the train station on videotape, he's seen tossing something in the garbage can. Right. Although I admit the police officers did search the garbage can. A review of the whole video shows that their search was cursory. Okay. Anything further, counsel? If there are no further questions, for these reasons and those stated in our brief, the people across this court affirm defendant's conviction for robbery. Thank you very much, counsel. Thank you. Do you have any rebuttal? There is no rebuttal. The state just said that the CTE video corroborates all elements of the offense. That's obviously untrue. If you look at the video, there's no evidence, even if you believe that the complainant gave money to my client, the evidence shows there's nothing in the video showing that it occurred due to the use of force or to the threat of imminent force. There's no aggressive behavior by my client. There's no gun. There's simply nothing in the video that corroborates that element of the offense. To the extent that it corroborates every element, that's incorrect. Second, Your Honors, the state said that the court found the victim credible. Also, that's not true. The alleged victim was contradicted by objective video evidence in the initial story he gave to the police. The court also disbelieved his testimony that there was a gun. We know the court at least did not find him credible on to that one point. And absent evidence of the gun, where that's the only evidence of threat in this case, we do not have a credible evidence of any threat. In addition, Your Honor, the idea that the court could somehow find that the gun did not exist, beyond a reasonable doubt of not believing that testimony, but also that it could find that there was some kind of threat from a gun, I think is just simply untrue. The fact is that this is not a case where he had his hand in his pocket or there's some kind of device, and we don't know whether they proved it to be a gun or something like that. This is a case where the victim said he was in a car with my client, with a gun in his face, for 15 minutes, and the court disbelieved that testimony. So I don't think that works either. So, Your Honors, In your testimony in the trial court about him pressing a gun against his side? Well, he did say that, but he also testified that my client never laid a hand on him. And also, we know that there was no gun recovered. I mean, that's the critical factor, Your Honors, is that my client was detained by the police immediately after this crime supposedly happened, in the place where it supposedly happened, and he didn't have any gun money. Therefore, Your Honors, we respectfully ask that this court find that the state's evidence is too improbable, unreasonable, or unsatisfactory to sustain my client's conviction. Thank you. Well, let me compliment the attorneys on their arguments, on their briefs. You should be advised that this case will be taken under advisement, and this court stands in recess.